G. SAMUEL CLEAVER [SBN 245717]
sam@gscleaverlaw.com
**LAW OFFICES OF G. SAMUEL CLEAVER**
5670 Wilshire Boulevard, 18th Floor
Los Angeles, CA 90036
Telephone: (323) 648-6676

Attorneys for Plaintiff Ebony Ballard

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EBONY BALLARD an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MEGAN J. BRENNAN, Postmaster General of the United States of America<br><br>　　　　Defendant. | Case No.: 2:20-cv-2679<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1)　Hostile Environment Harassment;<br>(2)　Retaliation<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ebony Ballard ("Plaintiff"), in support of his Complaint against Megan J. Brennan, Postmaster General, ("USPS" or "Defendant"), hereby alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action seeking judgment, relief and damages brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Equitable and other relief are also sought under 42 U.S.C. 2000e-5(g).

## II. JURISDICTION AND VENUE

2. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e, *et seq*. and 28 U.S.C. § 1331.

3. Venue in proper in this Court pursuant to 28 U.S.C. § 1391 because the acts, events, or omissions giving rise to Plaintiff's claims occurred in whole, or in part, in the Central District of California.

## III. PARTIES

4. At all times relevant herein, Plaintiff was employed by the USPS.

5. Defendant Megan J. Brennan is the Postmaster General of the USPS whose main office is located at 475 L'Enfant Plaza SW, Washington, D.C. 20260.

## IV. EEO ACTIVITY

6. On or about May 7, 2019, Plaintiff made a sexual harassment complaint to the USPS EEO counselor. On or about July 19, 2019, Plaintiff filed her formal complaint against the USPS alleging sex discrimination and hostile environment harassment, including sexual assault. On or about August 30, 2019 the USPS accepted an amendment of Plaintiff's complaint to include a claim for retaliation. Following the USPS investigation of Plaintiff's complaint, Plaintiff requested a Final Agency Decision. On December 30, 2019, the USPS issued its Final Agency Decision denying liability for any of Plaintiff's claims. The decision notified Plaintiff of her right to file suit against the USPS in federal district court

within 90 days.  Accordingly, Plaintiff has timely exhausted her administrative remedies required to file this Complaint.

## V. FACTUAL ALLEGATIONS

7. Plaintiff worked as a clerk for the USPS in Torrance, CA.  Plaintiff began work for the USPS on or about October, 2017.  Shortly after Plaintiff began working for the USPS, a male USPS employee, Raul Wysinger, started to sexually harass her.  Wysinger's harassment continued during Plaintiff's employment up until the time that Wysinger sexually assaulted Plaintiff on April 19, 2019.

8. By way of example and not limitation, Wysinger asked Plaintiff if he could unhook a cellphone from her shirt.  Wysinger told Plaintiff that she looked good, that he liked her buttocks, that he wanted to feel her buttocks, that he wanted to have sex with her, and that he wanted to get her into his truck to have sex with her.  Wysinger asked Plaintiff to have sex with him and asked her to go with him into areas where there were no security cameras.  Wysinger regularly made these comments and solicitations when he was working with Plaintiff.

9. Wysinger's harassing comments were unwelcome.  When Wysinger made lewd comments about Plaintiff's body or solicited her for sex, Plaintiff told him to stop, tried to ignore him, or told him that he was going to get in trouble for making the comments.

10. Wysinger's comments made Plaintiff very uncomfortable, made it difficult for her to concentrate on the job, and caused her anxiety about coming to work and about being placed in a situation where she was alone with Wysinger.

11. In 2017 and 2018 Plaintiff complained about Wysinger's conduct to her USPS supervisors, but the USPS took no action to prevent Wysinger's harassment.  In a nearly twenty-year career with the USPS, Wysinger did not know what the USPS policy concerning inappropriate touching was.  USPS supervisors also knew that Wysinger was harassing other female employees but did nothing to stop him.

12. On or about February 2019, Plaintiff was assigned to the Del Amo, California Station. The Del Amo Station is small. Only two clerks generally work there. Wysinger would stop by the station to pick up mail for his route. On April 19, 2019, Plaintiff was working at the front counter with USPS clerk Jumah Williams who was also Plaintiff's union representative. Plaintiff went into the backroom of the station to get stamps from the safe for a customer at her window.

13. Unknown to Plaintiff, Wysinger entered the backroom while she was standing at the safe. Wysinger grabbed her from behind, putting his arm across the top of her body and chest to restrain her, and asked Plaintiff if she had missed him. Wysinger tried to kiss Plaintiff's neck. Plaintiff told Wysinger to stop and tried to break free. Finally, he let go and grabbed her buttocks with both hands. Plaintiff yelled at him to leave and he left the backroom.

14. Plaintiff returned to the front of the station and told Williams what had had happened. Plaintiff attempted to work, but she was shaking and so upset that she could not continue working. Plaintiff felt sick. She had to stop working and went outside and threw up.

15. Plaintiff was too upset to speak on the phone, so Williams reported the assault to USPS supervisor Karla Arguello. Plaintiff was too upset to drive herself to the main post office to report what had happened so Supervisor Arguello had to come and transport her to the main post office. Plaintiff reported the assault to Supervisor Arguello and Torrance Postmaster Debra Graham-Davis. Postmaster Graham-Davis then sent Plaintiff home.

16. The harassment Plaintiff suffered, including Wysinger's assault, has caused her substantial harm. Plaintiff was extremely distraught by the sexual assault. Her anxiety caused her to have a car accident shortly after the incident. Plaintiff continues to have anxiety and panic attacks at work. For example, Plaintiff had a panic attack when she was subsequently alone at the Del Amo Station and heard keys turning in the door. Plaintiff has had to seek medical

treatment and use leave time because of the assault and the accident that resulted from the assault. Plaintiff has suffered loss of enjoyment of life and her relationships with others have suffered.

17. When Plaintiff returned to work, she learned that Postmaster Graham-Davis had not reported the sexual assault to any postal authorities and had not conducted any investigation. Williams, who was also Plaintiff's union representative told Plaintiff that he had been advised by other USPS managers that Plaintiff should make a report herself because Postmaster Graham-Davis did not care about what had happened and was not taking any action. This increased Plaintiff's anxiety because the USPS was not taking any steps to protect her from future attacks from Wysinger.

18. Plaintiff and Williams called the union vice-president who contacted Postmaster Graham-Davis and Supervisor Arguello to inquire why no report had been made. Plaintiff was so anxious that she had to leave work to go to the doctor who subsequently took Plaintiff off work.

19. On or about May 7, 2019, Plaintiff made a discrimination and harassment complaint to the USPS EEO counselor. Postmaster Graham-Davis, Supervisor Arguello, and, another supervisor, Alvaro Maldonado were aware that Plaintiff had initiated the EEO process because, among others, they were interviewed as part of it.

20. As part of the informal complaint resolution process, Plaintiff elected to try to resolve her differences through mediation. She learned from the EEO counselor, however, that the USPS was denying responsibility for Wysinger's harassment, and it would be fruitless to mediate. Plaintiff resolved to continue in the EEO process and requested that the EEO counselor send her the forms to file a formal complaint. Plaintiff had to make several requests before she received the formal complaint form from the EEO Counselor. Union representative Williams warned Plaintiff that she was likely to suffer retaliation if she continued the process

and filed a formal complaint.

21. On or about June 20, 2019, shortly after Plaintiff finally received the form to file a formal complaint, Plaintiff learned that the USPS had changed her schedule. Post-Master Graham-Davis and Supervisor Arguello made the decision to change Plaintiff's schedule. Previously, Plaintiff was scheduled to begin work at 9:00 a.m. The USPS changed her schedule to begin at 4:00 a.m. Plaintiff is a single mother with two small children. The change in schedule caused Plaintiff substantial hardship because the new schedule made it difficult for her to arrange childcare for her two small children. Not many childcare options are available at 3:00 a.m. when Plaintiff had to leave for work as compared to 8:00 a.m. when Plaintiff left for work on her previous schedule. When Plaintiff explained to Supervisor Arguello that the new schedule was causing her substantial hardship because of her childcare issues, Supervisor Arguello responded, "Sounds like a personal problem." Supervisor Arguello refused to change Plaintiff's schedule.

22. Due to the new schedule, Plaintiff was forced to miss work on or about June 27. When she returned to work, Supervisor Maldonado asked her why she was absent on June 27. Plaintiff explained that she had been unable to arrange childcare for that day. Supervisor Maldonado then loudly asked Plaintiff in front of her co-workers if she wanted to resign.

23. The USPS changed Plaintiff's schedule to retaliate against her for complaining about sexual harassment and for filing a formal complaint. The USPS's actions were calculated to punish Plaintiff, to coerce her to drop her complaint, as well as force Plaintiff to quit or job or to attempt to terminate her if she refused to quit.

24. Among others, the retaliation caused Plaintiff additional anxiety and emotional distress, caused her to use her leave to miss work, and caused her spend additional money on childcare, caused her to miss seeing her small children off in the morning, and the humiliation of being chastised in front of her co-workers.

25. The USPS continues to employ Wysinger. At least one of Plaintiff's supervisors has complained that Plaintiff is making it difficult for the agency because the USPS decided it cannot have Wysinger and Plaintiff working in the same location. In other words, the USPS is blaming Plaintiff for the consequences of a sexual assault that the agency failed to prevent.

# FIRST CAUSE OF ACTION
## HOSTILE ENVIRONMENT HARASSMENT

26. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

27. At all times relevant herein, the USPS was an employer subject to 42 U.S.C. § 2000e, *et seq.,* including but not limited to 42 U.S.C. §2000e-16.

28. Over more than a year long period, Plaintiff was subject to repeated comments about her body, her sexual desirability, and solicitations for sex culminating in Wysinger's sexual assault on Plaintiff on or about April 19, 2019.

29. The harassment was unwelcome. Plaintiff complained about it to her supervisors, told Wysinger to stop, tried to ignore him and did her best to fight him off when he assaulted her. Plaintiff immediately reported Wysinger's attack.

30. The conduct such as Wysinger's sexual assault was sufficiently severe and/or pervasive to alter the conditions of Plaintiff's employment and created a sexually abusive and/or hostile work environment.

31. Plaintiff perceived the working environment to be hostile or abusive. A reasonable woman in Plaintiff's position would have considered the working environment to be hostile or abusive.

32. USPS supervisors knew or should have known of Wysinger's harassment both through Plaintiff's complaints and other reports of Wysinger's sexually harassing conduct. Nevertheless, USPS failed to take prompt, effective remedial action reasonably calculated to end Wysinger's harassment. To the contrary, in a nearly twenty-year career with the USPS, Wysinger did not know

what the USPS policy concerning inappropriate touching was.  To date, Wysinger continues to work at the USPS even though the USPS concluded that he assaulted Plaintiff.

33. As an actual and legal, direct and foreseeable result of Defendant's conduct, Plaintiff suffered and will suffer harm for which he is entitled to general and special damages, including but not limited to back pay and front pay and benefits, emotional distress damages and attorney fees, and costs.

## SECOOND CAUSE OF ACTION
## RETALIATION

34. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein

35. At all times relevant herein, the USPS was an employer subject to 42 U.S.C. § 2000e, *et seq*

36. Plaintiff participated in activity protected under federal law and opposed unlawful conduct when she, among others, reported sexual harassment to her superiors and when she engaged in the EEO process including but not limited to, filing a formal Complaint.

37. After Plaintiff engaged in protected activities, the USPS subjected her to adverse employment actions, including but not limited to, outing her as a victim of sexual harassment, changing her schedule to a start time that made it difficult for Plaintiff to arrange for childcare, and demanding to know if she wanted to resign when she expressed that it was difficult to work her changed schedule.

38. Plaintiff was outed as a sexual harassment victim only days after she inquired why the USPS was not investigating her complaint.  Plaintiff's schedule was changed less than a week after she received the forms to file a formal EEO complaint.  USPS changed Plaintiff's schedule and pressured her to resign to retaliate against her for participating in the EO process.

39. Defendant took the above described actions against Plaintiff because

Plaintiff participated in the EEO process and because Plaintiff opposed an unlawful employment practice.

40. As an actual and legal, direct and foreseeable result of Defendant's conduct, Plaintiff suffered and will suffer harm for which she is entitled to general and special damages, including but not limited to back pay and front pay and benefits, emotional distress damages (for anger, anxiety, depression, among others), and attorney fees, and costs.

41. Defendant's unlawful employment practices described herein were willful, wanton, malicious and in reckless disregard of Plaintiff's rights.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. For an award for back pay and benefits, including restoration of sick and vacation leave, front pay and benefits, and any other general, compensatory, and special damages, including but not limited to emotional distress damages, according to proof;

2. For attorneys' fees and costs incurred in this action;

3. For pre-judgment and post-judgement interest at the highest lawful rate;

4. For injunctive relief, including but not limited to an order directing that all employees and supervisors at the Del Amo Station undergo documented anti-harassment training;

5. All other relief, whether legal, equitable, or injunctive, as this Court deems just and proper;

Dated: March 23, 2020                    LAW OFFICES OF G. SAMUEL CLEAVER

                                         BY: /s/ G. Samuel Cleaver
                                             G. Samuel Cleaver
                                             Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Dated:  March 23, 2020          **LAW OFFICES OF G. SAMUEL CLEAVER**

                          BY:   */s/ G. Samuel Cleaver*
                                   G. Samuel Cleaver
                                   Attorneys for Plaintiff